UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jennifer Breese,

      Plaintiff,

v.   Civ. No. 03-3098 (JNE/AJB)
    ORDER

TRIADvantage Credit Services, Inc.
and Michael Breese,

      Defendants.

---

John Goolsby, Esq., Consumer Justice Center, P.A., appeared for Plaintiff Jennifer Breese.

Eric J. Rucker, Esq., Briggs & Morgan, P.A., appeared for Defendant TRIADvantage Credit Services, Inc; Daniel Oberdorfer, Esq., Leonard Street and Deinard, P.A., appeared for Defendant Michael Breese.

---

Jennifer Breese, n/k/a Jennifer Pederson (Pederson), brought this action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681u (2000) (FCRA) against her brother, Michael Breese, and his employer TRIADvantage Credit Services, Inc. (collectively, Defendants). Pederson claims that Breese violated the FCRA by obtaining and using her credit report without a permissible purpose. Pederson also alleges a common-law claim of invasion of privacy. The case is before the Court on Defendants' motion for summary judgment and Pederson's motion for partial summary judgment as to liability and willfulness. For the reasons set forth below, the Court grants Defendants' motion in part and denies Pederson's motion.

I.      BACKGROUND

In January 2001, Minnesota resident Pederson asked her grandfather, Theodore White, to co-sign on a car loan for her from Wells Fargo Bank. White, who lives in California, agreed. In return for use of White's credit, Pederson agreed to make all payments associated with the loan.

1

In January 2003, White contacted several lending institutions to inquire about refinancing his home. The lenders informed him that there were problems with his credit score. Knowing that his grandson Breese had access to credit reports through his work at TRIADvantage, White requested that Breese pull his credit report and explain what problems existed with his credit.[1] On January 24, 2003, Breese pulled White's report which reflected the co-signed car loan with Pederson, several derogatory marks from late payments on the car loan, a recently opened Citibank credit card registered with a Minnesota address that White thought belonged to Pederson, and a balance on the credit card of $1700.00. Concerned about the problems with the car loan and the possibility of fraud in connection with the credit card, White asked Breese to pull Pederson's credit report as well. Breese complied. Pederson's report revealed the charges on the Citibank credit card and confirmed that the card's address was Pederson's. Pederson does not contest the accuracy of her credit report. Rather she contends that Breese and TRIADvantage violated the FCRA by retrieving the report for White.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing

---

[1]   TRIADvantage employs Breese as a Site Manager. TRIADvantage operates a collection agency and maintains a relationship with Trans Union, a consumer reporting agency, from whom TRIADvantage obtains consumer reports.

the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.     FCRA**

Section 1681b(a) of the FCRA sets forth an exclusive list of circumstances under which consumer reporting agencies are permitted to furnish consumer reports.[2] 15 U.S.C. § 1681b(a). In this case, the consumer reporting agency is Trans Union who is not a party to the litigation. A companion provision, § 1681b(f), imposes restrictions on persons seeking to obtain or use consumer reports. Specifically, § 1681b(f) provides that a person may not use or obtain a consumer report unless: (1) the report is obtained for a permissible purpose in accordance with § 1681b; and (2) that purpose is certified in accordance with § 1681e. In this case, Pederson alleges that Defendants obtained her credit report without a permissible purpose and without proper certification.

*1.     Permissible Purpose*

To succeed on her claim, Pederson must demonstrate that Defendants lacked a permissible purpose for obtaining her consumer reports. *See Phillips v. Grendahl*, 312 F.3d 357, 364 (8th Cir. 2002). Whether a permissible purpose existed is a question of law. *Edge v. Prof'l Claims Bureau, Inc.*, 64 F. Supp. 2d 115, 117 (E.D.N.Y. 1999). Defendants assert that they obtained the report on behalf of White who had a permissible purpose pursuant to 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(a)(3)(F)(i). For the reasons set forth below, the Court concludes

---

[2]     The parties and the Court agree that Pederson's credit report is a "consumer report" within the meaning of the Act. *See* 15 U.S.C. § 1681a(d).

that White, and consequently Defendants, had a permissible purpose pursuant to § 1681b(a)(3)(F(i). [3]

Under § 1681b(a)(3)(F)(i), a consumer reporting agency is permitted to furnish a report to a person if it has reason to believe the person "has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer."

Here, Pederson and White engaged in a business transaction involving credit when White extended his good credit to Pederson to enable her to get a car loan from Wells Fargo. In return for his good credit, Pederson agreed to make the payments on the loan thereby maintaining White's credit until the loan was fully paid off.[4] The parties do not dispute this agreement, nor do they dispute that Pederson initiated the transaction by soliciting her grandfather for his credit. Accordingly, this arrangement satisfies the requirement that "a business transaction that is initiated by the consumer" exist between the parties. 15 U.S.C. § 1681b(a)(3)(F)(i).

Turning to whether White had a legitimate need for Pederson's report in connection with that transaction, the Court finds *Cambridge Title Co. v. Transamerica Title Insurance Co.*, 817 F. Supp. 1263, 1278 (D. Md. 1992) *aff'd*, 989 F.2d 491 (4th Cir. 1993) instructive. In that case, the court held that a permissible purpose existed where the defendant, a title company, did not know, but suspected that the plaintiff, a principal at Cambridge—another title company, had misappropriated escrow funds. *Id*. That court concluded that "[t]here can be no doubt that defendant had a dire and legitimate need for obtaining [plaintiff's] credit report. The

---

[3]  Pederson does not challenge Defendants' claim of agency. As such, because White has a permissible purpose, Defendants, acting as White's agent, also have a permissible purpose. *See* 16 CFR pt. 600, App. § 604(3)(E)-6 ("An agent of a party with a 'permissible purpose' may obtain a consumer report on behalf his principal….").

[4]  When asked at oral argument about her damages, Pederson recognized the value of good credit by responding that a decrease in *her* credit score (arising from Defendants' pulling of her report) constitutes actual damages.

4

mismanagement of Cambridge had resulted in an apparent $1.3 million shortfall in its escrow accounts, and defendant justifiably sought to determine whether these funds had been converted to [plaintiff's] personal use." *Id.*

Like the defendant in *Cambridge Title*, White had a legitimate business need to review Pederson's credit report to determine if her defaults on the Wells Fargo loan and charges on the Citibank credit card were the cause of his reduced credit score. Furthermore, this is not a case where White merely suspected Pederson of wrongdoing; rather, his credit report revealed derogatory marks related to Pederson's activities. *Compare Thibodeaux v. Rupers*, 196 F. Supp. 2d 585, 592 (S.D. Ohio 2001) (holding that there was no permissible purpose where defendant's "belief that Plaintiff was concealing assets was based on nothing more than naked mistrust"). Accordingly, the Court concludes that White had a permissible purpose in requesting Pederson's credit report and as such, so did Defendants.

*2.   Certification*

Pederson also argues that even if Defendants had a permissible purpose, they failed to certify the pulling of Pederson's credit report in accordance with 15 U.S.C. § 1681b(f). The certification component of § 1681b(f) provides that a person shall not use or obtain a consumer report unless, in addition to a permissible purpose, "the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." The Court's review of the case law has found no case where a permissible purpose exists, yet a separate cause of action is established under the certification provision. To support her claim, Pederson relies on a footnote in the Eighth Circuit Court of Appeals decision in *Phillips* which states "Phillips has not alleged or briefed the adequacy of certification under 15 U.S.C. § 1681e. Section 1681b(f) is violated by lack of either a permissible purpose or

5

certification of the report, so Phillips cause does not depend on inadequacy of certification." *Phillips*, 312 F.3d at 364 n.6.

Unlike the facts of *Phillips*, Pederson's cause *does* depend on the inadequacy of certification. Because the Court has already concluded that there was a permissible purpose, Pederson is left with her allegation that the certification in this case—namely TRIADvantage's on-going certification with Trans Union—does not comply with 15 U.S.C. § 1681e. Section 1681e provides in relevant part:

> Every consumer reporting agency shall maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

15 U.S.C. § 1681e(a). As applied to this case, this section provides four requirements addressed to the consumer reporting agency, Trans Union: (1) that Trans Union maintain reasonable procedures to limit the furnishing of consumer reports to permissible purposes; (2) Trans Union's procedures require that Defendants identified themselves and certify the purpose for which Pederson's report was sought and to certify that the information will be used for no other purpose; (3) Trans Union will make reasonable efforts to verify new prospective users; (4) Trans Union may not furnish a consumer report if it has reasonable grounds to believe that the consumer report will be used for an impermissible purpose.

Notably, the Court discerns no allegations or facts in Pederson's arguments that support a claim that Trans Union, who is not a party to this litigation, failed to provide these required

6

procedures or that Trans Union's efforts were unreasonable. Instead, Pederson argues that Defendants did not comply with this provision because White's permissible purpose was not specifically certified to Trans Union; rather, Pederson alleges that TRIADvantage erroneously relied on its general certification in satisfying White's request. Pederson's argument however, overlooks the fact that § 1681b(f) provides that the user's certification may be "general or specific." Given that TRIADvantage had a general certification with Trans Union and that Pederson has failed to present evidence that Trans Union did not satisfy § 1681e(a), the Court concludes that the certification provision has been met. *Cf. Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 (5th Cir. 2000) (concluding that liability under § 1681e(a) arises only if there has been an improper disclosure of a consumer report by a consumer reporting agency).

Because Defendants complied with §§ 1681b(a) and 1681b(f), the Court need not reach the parties arguments relating to willfulness, negligence and vicarious liability. The Court therefore grants Defendants' motion for summary judgment with respect to Pederson's FCRA claim and denies Pederson's motion.

**B.   State Law Invasion of Privacy**

The sole basis for the Court's jurisdiction over Pederson's remaining state-law claim is 28 U.S.C. § 1367(a) (2000), which permits a district court to exercise supplemental jurisdiction over claims that are part of the same case or controversy as the claims that fall within the district court's original jurisdiction. A district court may, in its discretion, decline to exercise supplemental jurisdiction when "all claims over which it has original jurisdiction" have been dismissed. 28 U.S.C. § 1367(c)(3); *see Franklin v. Zain*, 152 F.3d 783, 786 (8th Cir. 1998) (holding district court did not abuse its discretion in declining to exercise supplemental jurisdiction over state-law claim pursuant to section 1367(c)(3)). In this case, Defendants are

entitled to summary judgment on all claims that fall within the Court's original jurisdiction, and the Court declines to exercise its supplemental jurisdiction over Pederson's remaining state-law claim.

### III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment [Docket Nos. 24 & 28] is GRANTED as to Count I.

2. Pederson's Motion for Summary Judgment [Docket No. 31] is DENIED.

3. Count I of Pederson's Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

4. Count II of Pederson's Complaint [Docket No. 1] is DISMISSED WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 2, 2005

    S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge